UNITED STATES of America,
Plaintiff–Appellee,

v.

Ian GORDON, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellant,

v.

Ian GORDON, Defendant–Appellee.

Nos. 89–5003, 89–5038.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1989.

Decided Feb. 2, 1990.

Rehearing and Rehearing In Banc
Denied March 31, 1990.

Marvin David Miller, Alexandria, Va., for defendant-appellant.

Bernard James Apperson, III, Asst. U.S. Atty., Arlington, Va. (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and MURNAGHAN and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Ian Gordon appeals his conviction of possession of cocaine with the intent to distribute. 21 U.S.C.A. § 841(a)(1) (West 1981). He claims violations of the fourth and fifth amendments and that the district court erroneously denied him offense level reductions for acceptance of responsibility and for being a minimal participant. The United States cross-appeals Gordon's sentence claiming that the district court erroneously found Gordon to be a minor participant. We affirm the conviction but reverse and remand for resentencing.

I.

On September 14, 1988, Drug Enforcement Administration Special Agent Callahan and Loudoun County Deputy Becerra were engaged in general surveillance of passengers at Washington National Airport in Arlington, Virginia. They observed Gordon deplane from a Pan Am shuttle from New York. While the officers knew that New York was a "source city" for narcotics, they had no prior information about this particular flight or Gordon, nor did Gordon meet a "drug courier profile."

Callahan and Becerra followed Gordon outside the terminal, where Callahan approached Gordon and explained that he was part of a Drug Enforcement Administration drug interdiction team. Callahan asked for and received permission to search Gordon's bag. Finding no contraband, Callahan requested permission to "pat him down." Gordon again gave verbal permission. Upon discovering a bulge in Gordon's pocket, Callahan requested to see its contents. Although he claimed that the pocket contained only a sandwich, Gordon removed a small clear plastic bag partially wrapped in gray duct tape containing 249.-50 grams of white powder, which Callahan recognized to be cocaine. The officers placed Gordon under arrest and informed him of his *Miranda* rights.

When the officers asked Gordon if he would answer some questions he responded, "What do you want to know?" When asked the question, "Where were you taking this stuff?" Gordon shook his head in response. He was immediately transported to a nearby police station, a trip which Gordon concedes took no more than five minutes. Becerra testified that at the station he asked Gordon "if he was high, at which he said no. I asked him if he snorted or smoked cocaine. He said no." When asked how Gordon indicated that he did not snort or smoke cocaine, Becerra stated that Gordon "made a negative gesture with his head."

At a preliminary hearing, Gordon moved to suppress the cocaine as the product of an illegal search and seizure. He also moved to suppress any inculpatory statements made at the police station on the basis that their admission would violate his fifth amendment rights under *Miranda.* Both motions were denied and Gordon was subsequently convicted by a jury of possession with the intent to distribute cocaine.

At sentencing, Gordon admitted that he was guilty of simple possession of cocaine and requested a reduction for acceptance of responsibility. U.S.S.G. § 3E1.1. However, on the advice of counsel he would not acknowledge that he possessed the cocaine with the intent to distribute. He refused to elaborate, expressing his desire to preserve any fifth amendment rights in the event of a successful appeal and retrial. He also requested a four-level reduction of his offense level, claiming that as a courier he was entitled to be classified as a minimal participant under section 3B1.2(a) of the guidelines. Over the government's objection, the court granted Gordon a two-level reduction for being a minor participant. U.S.S.G. § 3B1.2(b). The resulting offense level of 18 with a criminal history category of I produced a guideline range of 27–33 months. The court sentenced Gordon to 27 months.

II.

On appeal, review of a district court determination regarding role in the offense is governed by the clearly erroneous standard. *United States v. Daughtrey,* 874 F.2d 213 (4th Cir.1989) (determination that defendant was neither minimal nor minor

participant is a factual question and due deference requires affirmance unless clearly erroneous); *see United States v. Sanchez–Lopez*, 879 F.2d 541 (9th Cir.1989); *United States v. Wright*, 873 F.2d 437 (1st Cir.1989); *United States v. Nunley*, 873 F.2d 182 (8th Cir.1989); *United States v. Rojas*, 868 F.2d 1409 (5th Cir.1989).

■ Gordon bases his claim that he was a minimal participant on the commentary to section 3B1.2 of the guidelines, which states that an offense level reduction for minimal participation would be appropriate "in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." U.S.S.G. § 3B1.2, comment. (n.2). Gordon also argues that the government's reference to him during the trial as a courier entitles him to a reduced offense level. However, as this circuit and the Fifth Circuit have held, the fact that a defendant is a drug courier does not automatically entitle him to a reduction. *United States v. White*, 875 F.2d 427, 434 (4th Cir.1989); *see United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.1989). In *Buenrostro* the court, referring to the commentary cited by Gordon, stated that "[t]he example suggests that some couriers may appropriately receive the reduction; it does not suggest that all couriers are entitled to a downward adjustment." *Buenrostro*, 868 F.2d at 138. In *White* we adopted the reasoning of *Buenrostro* and held that section 3B1.2 of the guidelines turns upon culpability, not courier status. *White*, 875 F.2d at 434. A defendant may be a courier without being less culpable than the other participants. *Id.* Gordon offered absolutely no evidence to support a finding that he was a minimal participant. Therefore, we affirm the refusal by the district court to grant Gordon a four-level reduction of his offense level on this basis.

In its cross-appeal, the government urges that Gordon was not entitled to the two-level reduction for minor participant status.

Its position is simply that Gordon was apprehended while possessing, with the intent to distribute, a quantity of cocaine. The government had no knowledge of the source of the cocaine or that Gordon was involved in a conspiracy with others. At sentencing Gordon offered no evidence regarding the scope of his involvement with another participant or any other evidence on which the district court could base a finding of reduced culpability or involvement justifying his classification as a minor participant. Although Gordon correctly asserts that the number of defendants indicted does not determine whether there was more than one participant involved in the offense, there was no evidence here of participation by anyone else.

■ The government is correct that mitigating role adjustments apply only when there has been group conduct and a particular defendant is less culpable than other members of the group to such a degree that a distinction should be made at sentencing between him and the other participants.[1] When seeking a mitigating adjustment, a defendant has the burden of proof to convince the district court of its application by a preponderance of the evidence. *United States v. Urrego–Linares*, 879 F.2d 1234, 1239 (4th Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989). Since there are no facts in the record to support Gordon's position, he is forced to rely on two conclusory statements, one by the prosecuting attorney and the other by the probation officer who prepared the presentence report. During trial, the prosecuting attorney referred to Gordon as a courier, and Gordon argues that this entitles him to be viewed as a minimal participant. Interestingly, Gordon continues to deny that he intended to deliver the cocaine to anyone, yet at the same time he contends that the government's reference to him as a courier entitles him to a reduced offense level. Also, a worksheet prepared by the probation officer and submitted to the court recommended a two-

---

1. The language of Chapter Three, Part B, Role in the Offense, requires that for an aggravating or mitigating adjustment to apply, evidence of group conduct is necessary. In addition, a de-

fendant's role in the offense should be weighed against the elements of the offense of conviction. *Daughtrey*, 874 F.2d at 216.

level reduction as a minor participant. But, as we have previously held, the decision of the district court on whether to apply a particular guideline is not controlled by the probation officer's recommendation. *White*, 875 F.2d at 431. Further, in paragraph 5 of the presentence report entitled "Defendant's Role in the Offense," it is reported that "[t]he defendant is solely responsible for the charge for which he is before the court." The district court adopted the report in its statement of findings and reasons for the sentence imposed.

We are faced with a record devoid of any justification for the conclusion of the district court that "[t]he court finds that the base level should be reduced by 2 for the defendant's role in the offense...." The court offered no explanation nor pointed to any fact to support its conclusion. *See United States v. White*, 888 F.2d 490, 495 (7th Cir.1989) ("Every sentence under the Guidelines must be supported by reasons.").

■ Under the new sentencing system mandated by the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1989), a request for the district court to find and apply an aggravating or mitigating factor when determining the appropriate guideline sentence must be based on some evidence. The moving party cannot meet his burden simply by offering conclusory statements. Here, the record is devoid of any evidence, aggravating or mitigating, other than that Gordon was simply a participant not entitled to any adjustment. *See* U.S.S.G. § 3B1.4. While the finding of the applicability of an aggravating or mitigating factor is protected on appeal by the clearly erroneous standard of review, this protection does not extend to a determination made without any factual foundation. To follow Gordon's logic, everyone apprehended for possession with the intent to distribute cocaine under these circumstances would be entitled to a reduced offense level because of the general nature of the drug trade where contraband passes from its primary source to the ultimate user through a number of hands.

Consequently, because the district court erroneously applied a two-level reduction for minor role, we remand for resentencing within the sentencing guidelines range resulting from an offense level of 20 and a criminal history category of I.

### III.

■ Gordon also argues that the district court erred by not reducing his offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. Although at sentencing he did admit that he was guilty of simple possession of cocaine, he did not accept responsibility for his intent to distribute it. He maintains that to have done so would have rendered a successful appeal a hollow victory. He contends that in the event of retrial his admission to the probation officer and district court could be used against him to prove intent to distribute (a fact which Gordon has contested throughout). Gordon characterizes this as a Hobson's choice between obtaining a reduction and preserving his right to appeal. He likens the choice to the impermissible situation where a defendant must choose to surrender one constitutional right to assert another one. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Gordon relies on *United States v. Perez–Franco*, 873 F.2d 455 (1st Cir.1989), and contends that it supports his position. Although we do not accept the holding and reasoning of *Perez–Franco* as correct, it nevertheless offers Gordon no support. In *Perez–Franco*, the First Circuit held that a defendant need only accept responsibility for the count to which he has pled guilty as part of a plea agreement. *Id.* at 463. We believe the approach taken by the Second and Fifth Circuits is correct and hold that in order for section 3E1.1 of the guidelines to apply, a defendant must first accept responsibility for all of his criminal conduct. *See United States v. Moskowitz*, 888 F.2d 223 (2d Cir.1989); *United States v. Tellez*, 882 F.2d 141 (5th Cir.1989). However, a defendant is not penalized for failing to accept responsibility. Rather, acceptance of responsibility is a mitigating

factor available under appropriate circumstances.

 ■ Gordon further argues that the district judge's comment that "I don't really view acceptance of responsibility as a post-guilty finding or plea factor" indicated that he believed that acceptance of responsibility would never be available as a mitigating factor after trial. However, in holding that Gordon was not entitled to the reduction, the district judge also stated that "I don't think he is automatically denied the two points merely because he goes to trial." The district court found that Gordon had done nothing to indicate his acceptance of responsibility. Indeed, Gordon's claim that he was entitled to this mitigating factor while at the same time denying the criminal conduct for which he was convicted by a jury borders on the frivolous.

 The determination of whether to give a reduction under section 3E1.1 of the guidelines is a factual one reviewable under the clearly erroneous standard. *United States v. White*, 875 F.2d 427, 431 (4th Cir.1989). The sentencing judge is in "a unique position to carefully examine the particular circumstances of each case." *Id.* As the district court correctly pointed out, the timeliness of the defendant's conduct in accepting responsibility is a consideration. U.S.S.G. § 3E1.1, comment. (n. 1(g)). There is nothing in the record to indicate that Gordon was entitled to the reduction for acceptance of responsibility except for his counsel's assertion that he was sincere in accepting his guilt for simple possession of cocaine. The district court did not clearly err in denying Gordon the reduction for acceptance of responsibility.

### IV.

 ■ Gordon also challenges the denial of his motion to suppress the cocaine by first arguing that he was "seized" in violation of his rights under the fourth amendment. But, before addressing the constitutional issue, we must first resolve the issue of whether a seizure took place. This determination is a question of fact subject to a clearly erroneous standard on appeal. *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir.1982). In determining whether a person has been "seized," the issue is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (plurality opinion)). We have frequently used this standard in reviewing district court decisions. *See United States v. Gray*, 883 F.2d 320, 322 n. 2 (4th Cir.1989).

 ■ Gordon argues that because the officers had no justification for interfering with his travel this encounter was a seizure. However, the fact that Gordon did not meet a "drug courier profile" and the officers had no other reason to suspect Gordon does not mandate that the officers were prohibited from having a brief police-citizen encounter. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983) (fourth amendment not violated when law enforcement officers merely approach an individual in public and ask him to answer some questions). In fact, it is only when an encounter is classified as a seizure that the court must determine whether there was a reasonable suspicion. *United States v. Harrison*, 667 F.2d 1158, 1160 (4th. Cir.), *cert. denied*, 457 U.S. 1121, 102 S.Ct. 2937, 73 L.Ed.2d 1335 (1982).

 ■ Gordon argues that an Arlington County, Virginia, ordinance making it a misdemeanor for a person in a public place to refuse to identify himself when requested to do so by a law enforcement officer [2] and the fact that his father was a former police officer who taught him to respect and obey law enforcement personnel demonstrate that he believed that he was not

---

**2.** Gordon offered no evidence to show that he was aware of this ordinance at the time of his arrest.

free to leave. But Gordon misinterprets the *Mendenhall* objective test of whether a *reasonable* person under the circumstances would have believed that he was not free to leave.

As Gordon testified, the officers were polite and quiet, did not instruct him that he could not leave, did nothing to prevent him from leaving, and did not tell him that he must permit the search. Based on all the facts and circumstances, the district court was not clearly erroneous in finding that there was not a seizure of Gordon's person.

 Gordon also challenges the voluntariness of the search. The voluntariness of a defendant's consent to a search is a factual question determined in light of the totality of the circumstances and should be upheld unless clearly erroneous. *United States v. Peterson,* 524 F.2d 167, 178 (4th Cir.1975) (citing *Schneckloth v. Bustamonte,* 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973)), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). Moreover, the government need not demonstrate that the defendant knew of the right to refuse to consent for the search to be deemed a voluntary one. *Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2058–59. When the officer discovered a bulge in Gordon's pocket, he asked Gordon what the pocket contained. When Gordon replied, "A sandwich," the officer asked to see it. Gordon then removed the bag of cocaine from his pocket. The district court was correct in finding that this was a voluntary search.

## V.

 Gordon also argues that shaking his head in a negative manner in response to a question at the police station of whether he used cocaine, thus implying that the cocaine may not be for personal use, was obtained in violation of his fifth amendment right against self-incrimination. Gor-

don characterizes the shaking of his head after being asked at the airport where he was taking the cocaine as ending the interrogation so that a subsequent question at the police station without renewed warnings did not "scrupulously honor" his "right to cut off questioning" under *Miranda* as interpreted by *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Gordon's reliance on *Mosley* is misplaced. *Mosley* held that the principles of *Miranda* were not violated when, after a defendant had terminated an interrogation and a significant amount of time had elapsed before another officer sought to question the defendant about an unrelated crime, the *Miranda* warnings were given again. Here, only a few minutes had passed between the *Miranda* warnings at the airport and the questioning at the police station. Under these circumstances, it was unnecessary for the officers to recite the *Miranda* warnings again.[3]

 Additionally, the finding by the district court that Gordon did not indicate that he was terminating the interrogation is fully supported by the evidence. In response to whether he would answer questions, Gordon asked, "What do you want to know?" When asked where he was taking the cocaine, he replied by shaking his head. Reasonable interpretations of this act are that he did not know or that he did not intend to answer that question—not that he was refusing to answer other questions. We agree with the district court that Gordon did not indicate that he intended to conclude all questioning. The dissent would hold that Gordon did not waive his *Miranda* rights. However, a waiver "need not be explicit, but may be inferred from all of the circumstances." *United States v. Hicks,* 748 F.2d 854, 859 (4th Cir.1984); *see also North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979) ("The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily

---

**3.** The dissent indicates puzzlement by a discussion of *Mosley.* However, in his brief Gordon relied heavily on *Mosley* and urged this court to hold that he had terminated the interrogation at the airport and, thus, because the agents did not

inform him of his *Miranda* rights a second time before beginning questioning at the police station, his *Miranda* rights were not scrupulously honored.

waived the rights delineated in the *Miranda* case."). Here, Gordon indicated that he understood his rights, did not request counsel, and when asked whether he would answer some questions, responded by asking "what do you want to know." All of the circumstances support the conclusion by the district court that Gordon waived his rights, a finding which we cannot say was clearly erroneous. *See United States v. Smith,* 608 F.2d 1011, 1013 (4th Cir.1979). Additionally, his statement at the police station was freely and voluntarily made and not in violation of his fifth amendment right against self-incrimination.

AFFIRMED in part; REVERSED in part; and REMANDED.

MURNAGHAN, Circuit Judge, dissenting:

The panel here affirms the district court's finding that Ian Gordon waived his *Miranda* rights when he asked interrogating police officers what they wanted to know, twice refused to answer their questions on the delivery of drugs, and then shook his head when asked whether he used drugs. Because I cannot find any evidence in the record to support the district court's conclusion of waiver, I respectfully dissent.[1]

After Gordon was placed under arrest at the airport, Agents Callahan and Becerra advised him of his *Miranda* rights. Becerra asked Gordon whether he would talk with the agents and Gordon replied, "What do you want to know?"

Becerra asked, "Where are you taking this stuff?" Gordon responded by shaking his head in a negative manner, he would not answer the question. Gordon was then taken to the police station.

At the station, Agent Callahan began processing Gordon, taking the usual personal information such as birth date and place of residence. During the processing, Becerra resumed his prior questioning and again asked Gordon where he was taking the drugs. Becerra told Gordon that the U.S. Attorney would be informed of his cooperation and that the U.S. Attorney might help him. Gordon replied, "No one can help me now. Only the Lord." He again refused to answer Becerra's question.

Becerra, referring to the drugs, then asked Gordon, "Do you use this stuff?" In response, Gordon just shook his head in a negative manner. Gordon's head gesture and a quantity of cocaine (9 ounces) consistent with either distribution or personal consumption were *the only evidence* supporting the distribution charge on which Gordon was convicted.

My brothers conclude that the district court's determination of the voluntariness of the gesture is fully supported by the evidence. *See United States v. Smith,* 608 F.2d 1011, 1013 (4th Cir.1979) (determination of waiver reviewed by appellate court under "clearly erroneous" standard). They reach that conclusion because Gordon never indicated that he wanted to conclude all questioning and even his negative response to the first question could have been reasonably interpreted as simply refusing to answer the specific question.

If our inquiry were whether Gordon unambiguously asserted his right to remain silent, I would join Judge Wilkins' opinion. But I fear he asks the wrong question. The inquiry is not whether Gordon clearly invoked his rights to remain silent and to have counsel present during custodial interrogation but, rather, whether he ever waived them. It cannot be said here that a determination of knowing and voluntary

---

1. I do agree with Judge Wilkins' fourth amendment analysis and find none of Gordon's arguments on this basis persuasive. Particularly unappealing is Gordon's contention that the existence of an Arlington County, Virginia, ordinance requiring identification upon request transformed the encounter with the police into a seizure. The ordinance is completely inapplicable to the present case because the Virginia Supreme Court has interpreted the ordinance to require a reasonable and articulable suspicion prior to the imposition of criminal liability for refusal to provide identification. *Jones v. Commonwealth,* 230 Va. 14, 334 S.E.2d 536 (1985). Thus, as a matter of statutory interpretation, the ordinance could not have been applied to the encounter and the officers did not attempt to invoke its authority.

waiver is supported by substantial, indeed if any, evidence.

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny have made indisputably clear that the prosecution can make no use of an accused's statements elicited during custodial interrogation unless it demonstrates that an accused had waived his *Miranda* rights prior to interrogation.[2] *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612; *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979) (courts must presume that defendant did not waive *Miranda* rights); *Tague v. Louisiana,* 444 U.S. 469, 470–71, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980) (per curiam) (heavy burden on government to show knowing and intelligent waiver); *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) (government bears heavy burden and must prove waiver by "preponderance of evidence"). Waiver is defined as an "intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Thus, the record must contain sufficient evidence to support the inference that the defendant was in fact willing to make a statement. And, the defendant's willingness to make a statement cannot be presumed solely because a statement was in fact made. *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628.

The record here simply contains insufficient evidence to conclude that Gordon knowingly and voluntarily waived his *Miranda* rights. Gordon never indicated that he was willing to make a statement and he never did make a verbal statement to the police that was responsive to any of their questions. Indeed, some of Gordon's ac-

tions were marked with steadfast resistance. Aside from his resistance to answer the officers' questions, Gordon only did two things: (1) when asked if he was willing to talk, he replied, "What do you want to know?" and (2) while being processed, he shook his head in response to Becerra's question on personal drug consumption. Gordon's conduct cannot constitute waiver.

Gordon could not have waived his *Miranda* rights by saying "What do you want to know?" Its content does not allow an inference that Gordon was willing to make a statement. If it suffices to constitute waiver, then almost any statement other than "No!" will constitute waiver. As long as an accused verbally responds to an officer who asks if he will talk, waiver can be found notwithstanding an absence of evidence indicating that the accused *was willing to make a statement.* Such a rule eviscerates the waiver requirement.

But here the situation is even worse. After Gordon said, "What do you want to know?" the officers asked Gordon where he was taking the drugs. He shook his head and did not answer the question. His gesture was not an answer to the question: there is no destination equivalent to "no," at least none employed by Gordon. Gordon's gesture was a refusal to answer either the specific question or all questions.

Even in cases in which an accused *has waived* his *Miranda* rights, when he then ambiguously asserts his right to remain silent, the police are allowed to ask only limited questions to clarify the ambiguity. *See Lightbourne v. Dugger,* 829 F.2d 1012, 1018 (11th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988); *United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1756, 100 L.Ed.2d 218

2. It is only after an accused has waived his *Miranda* rights and custodial interrogation has been permissibly initiated that the accused must indicate his wish not to be interrogated to make further questioning impermissible. *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612–13. Once the accused so indicates a desire to remain silent, all interrogation must cease. *Id.* at 473–74, 86 S.Ct. at 1627–28.

The panel's discussion of *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975),

is puzzling to say the least. *Mosley* is an exception to the rule that prohibits further interrogation once an accused indicates his intent to remain silent. *Mosley* provides the police with the ability to resume interrogation after a significant length of time if they "scrupulously honor" an accused's right to cut off questioning. *Id.* at 104, 96 S.Ct. at 326. It simply does not apply here.

(1988); *cf. Smith v. Illinois*, 469 U.S. 91, 96 n. 3, 105 S.Ct. 490, 493 n. 3, 83 L.Ed.2d 488 (1984) (per curiam) (noting, but not resolving, conflict between courts over whether an ambiguous request permits limited clarifying questions or instead demands cessation of interrogation). Here we have an ambiguous refusal to answer a question[3] coupled with a lack of any evidence indicating that Gordon was willing to make a statement. The police should have clarified Gordon's refusal to answer the question in order to determine whether he was willing to talk. *Cf. Connecticut v. Barrett*, 479 U.S. 523, 529–30, 107 S.Ct. 828, 832–33, 93 L.Ed.2d 920 (1987) (when an accused's request for counsel, "understood as ordinary people would understand [it]," is ambiguous, the request should be construed broadly by the court). Because there was absolutely no evidence that Gordon was willing to make a statement, Gordon's course of conduct preceding the question on drug consumption did not constitute waiver.[4]

The only fact capable of demonstrating waiver is Gordon's possibly inculpatory gesture itself. But a valid waiver cannot be presumed simply because a statement was in fact elicited. *Miranda*, 384 U.S. at 475, 86 S.Ct. at 1628. Yet, even more troubling is the fact that Gordon's inculpatory response was a nonverbal gesture made in reaction to an accusatory question. Such a response is far more ambiguous than a verbal response, and, alone, is incapable of communicating a knowing and voluntary waiver.

As Judge Wilkins notes, such gestures are susceptible to various reasonable interpretations. A head shake could have been intended as an answer to a question or instead it could have been intended as a refusal to answer the specific question or all questions.[5] In the case of a nonverbal statement, two separate inferences must be drawn for one to conclude waiver: (1) the gesture was an answer, not a refusal to answer; and (2) the defendant answered the question because he wanted to do so voluntarily, declining to exercise his rights. It seems, to me, that drawing these inferences in the present case does a great injustice to the protections of *Miranda*, greatly increasing the risk of police precipitation of reactive gestures as grounds for conviction, and greatly decreasing the likelihood that defendants were actually willing to make these gestures.

Significantly, the *Miranda* rights only forewarn an accused to keep his "mouth shut," not his "head still." *Miranda* essentially set forth a disclosure scheme, based on the premise that voluntariness can be ensured only by informing an accused of the consequences of foregoing his right to have counsel present during interrogation. *See Barrett*, 479 U.S. at 530, 107 S.Ct. at 832. But, pursuant to *Miranda*, an accused is only informed that "anything *said* can and will be used against [him]." *Miranda*, 384 U.S. at 469, 86 S.Ct. at 1625 (emphasis added).[6] A reasonable inference an accused might draw from such a warning is that his rights to remain silent and to have the assistance of counsel will be pro-

3. Even assuming, for the sake of argument, that Gordon's head gesture was unambiguous and was clearly intended only as a refusal to answer the specific question on delivery, the police did not even honor that request. After Gordon refused to answer the delivery question, the police, at the station, again asked him the same question. A request not to be questioned with regard to a particular subject-matter must be honored by the police. *United States v. Vasquez*, 476 F.2d 730, 732–33 (5th Cir.), *cert. denied*, 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 72 (1973). Further questioning after police refuse to honor a desire for limited silence is impermissible.

4. Gordon said, "What do you want to know?", shook his head and refused to answer a ques-

tion, was taken to the station, and again refused to answer the question.

5. That Gordon's gesture was a refusal to answer is, perhaps, more likely when considering that he also shook his head in refusing to answer the officer's first question.

6. Callahan told Gordon that "he had the right to remain silent, that anything he *said* could and would be used against him in a court of law; that he had the right to an attorney; if he could not afford one, one would be provided for him by the court; and that he did not have to make any statements at this time unless he wished to do so." (Emphasis added.)

tected as long as he does not "say" anything. Gordon should not be considered to have waived his *Miranda* rights when he was not informed that a responsive yet ambiguous gesture could be used against him, particularly when no other evidence existed to show that he was willing to make such a statement.[7] *See Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987) ("The *Miranda* warnings ensure that a waiver of these rights is knowing and intelligent by requiring that the suspect be fully advised of ... the critical advice that whatever he chooses to say may be used as evidence against him.").

Because Gordon did not waive his *Miranda* rights, and because the admission of his head gesture into evidence significantly prejudiced his case, I would reverse Gordon's conviction.[8]

---

**7.** I do not mean to suggest that nonverbal communication should be prohibited from the interrogation room, only that the police clarify whether an accused is in fact willing to make such a statement prior to eliciting it.

**8.** Whereas I would reverse Gordon's conviction, I do not reach the Sentencing Guidelines issues addressed in the panel opinion. I must note, however, that I am troubled by Judge Wilkins' rejection of an approach used by the First Circuit on an issue that is not presented in this case. Not only does Judge Wilkins unnecessarily create a direct conflict with another circuit court, but his statements, *obiter dictum,* restrict the discretion of the sentencing judges.

Prior to sentencing, Gordon admitted his possession of the cocaine but did not admit an intent to distribute; he feared that such an admission might be used against him if he was successful on appeal. The probation office's report recommended against giving Gordon a downward adjustment due to his failure to admit the crime for which he was convicted. Although the district court denied Gordon the acceptance of responsibility adjustment, the judge stated reasons different from those contained in the probation office's report. Essentially, Judge Bryan reasoned that something more than post-conviction statements is required to manifest acceptance of responsibility.

Nevertheless, Judge Wilkins addresses, and rejects, Gordon's argument that a defendant should not be required to admit the entire crime for which he was convicted to receive the responsibility adjustment. In light of Judge Bryan's rationale, the argument is a *non-issue.* Also unnecessary is Judge Wilkins' rejection of the approach used in *United States v. Perez–Franco,* 873 F.2d 455 (1st Cir.1989), in which the First Circuit held that a defendant need only accept responsibility for the counts to which he has pled guilty as part of a plea agreement. *Id.* at 463. Judge Wilkins takes the opposite view, stating that "for section 3E1.1 of the guidelines to apply, a defendant must first accept responsibility for all of his criminal conduct." But, as Judge Wilkins acknowledges, *Perez–Franco* is irrelevant. The problem here is that Gordon did not accept responsibility for the count on which he was convicted. The correctness of *Perez–Franco* is not before the Court.