915 F.2d 1566
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Alan O'CONNER, Defendant-Appellant.
 No. 90-5758.
 United States Court of Appeals, Fourth Circuit.
 Argued July 19, 1990.
Decided Oct. 16, 1990.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. N. Carlton Tilley, Jr., District Judge. (CR-89-15-G)
 Susan Hayes, Greensboro, N.C., (argued) for appellant; E. Raymond Alexander, Jr., Greensboro, N.C., on brief.
 Harry L. Hobgood, Assistant United States Attorney, Greensboro, N.C., (argued) for appellee; Robert H. Edmunds, Jr., United States Attorney, Greensboro, N.C., on brief.
 M.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Charles O'Conner was convicted for selling firearms without a license, in violation of 18 U.S.C. Secs. 922 & 924, and was sentenced to 16 months of incarceration. He has appealed his conviction, arguing that: (1) the evidence was insufficient to show that he knew of the law's requirement that he have a license; (2) the prosecutor's prejudicial statements at trial required a new trial; (3) the acceptance of responsibility provision in the Sentencing Guidelines is unconstitutional; and (4) his sentence was improperly increased for having sold firearms to a prohibited individual. We find none of O'Conner's arguments persuasive and, accordingly, affirm his conviction and sentence.
 
 I.
 
 2
 Charles "Chuck" O'Conner sold firearms in the Ramseur, North Carolina, area. Advertisements that he placed in local newspapers alerted federal officials that he might be selling firearms without a federal firearms license. After determining that O'Conner did not have a license, Bureau of Alcohol, Tobacco and Firearms ("BATF") Agent Ted Warren, in an undercover capacity, contacted O'Conner about buying guns.
 
 
 3
 From March to June 1988 Agent Warren, operating as Ted Noonan, bought several guns, including semiautomatic rifles, from O'Conner and three other people whom he met through O'Conner. O'Conner never asked Warren for identification nor did O'Conner have him fill out the required registration forms.
 
 
 4
 On January 30, 1989, O'Conner and the three others, Lorrie Burroughs, Sid McNeill, and Harold Poole, were indicted for dealing in firearms without federal firearms licenses. McNeill pleaded guilty. Trial began as to the other three defendants in March 1989 in the United States District Court for the Middle District of North Carolina. On August 30, the district court granted the defendants' motion for a new trial because the jury had not been instructed that the government must prove that the defendants willfully dealt in firearms without a license. The charges against Poole and Burroughs were voluntarily dismissed and the new trial proceeded against only O'Conner.
 
 
 5
 O'Conner was convicted of violating 18 U.S.C. Sec. 922(a)(1)(A). The base offense level provided by the Sentencing Guidelines was 6. Three levels were added for the unlawful sale of 32 guns. Two levels were added for the sale of firearms to a felon, a prohibited individual. O'Conner was denied the acceptance of responsibility credit. With a range of 12 to 18 months of imprisonment applicable, the district judge sentenced O'Conner to 16 months. O'Conner has appealed his conviction on four issues.
 
 II.
 
 6
 O'Conner first contends that the evidence was insufficient to convict him because the firearms statute penalizes only those unlicensed dealers who engage in conduct in violation of a "known" legal duty. O'Conner claims that he was unaware of the federal license requirement for dealing in firearms and that no evidence was introduced to show that he ever knew of any such requirement. He says the evidence showed that he did not conceal his firearms dealing activity--for instance, he placed ads in the newspaper with his name and telephone number. That lack of concealment, claims O'Conner, leads to the logical inference that he did not know of the illegality of what he was doing.
 
 
 7
 The substantive offense for which O'Conner was convicted is defined in 18 U.S.C. Sec. 922(a)(1)(A): "It shall be unlawful for any person, except a ... licensed dealer, to engage in the business of ... dealing in firearms." The penalty for the offense is set out in Sec. 924(a)(1)(D):
 
 
 8
 [W]hoever willfully violates any other provision of this chapter shall be fined not more than $5,000, imprisoned not more than five years, or both, and shall become eligible for parole as the Parole Commission shall determine.
 
 
 9
 18 U.S.C. Sec. 924(a)(1)(D) (1976 & 1990 Supp.) (emphasis added).
 
 
 10
 We express no opinion on the question of whether "willfully" does indeed require proof that the defendant violated a known legal duty. For even assuming that the statute requires such proof, the jury was so instructed and the following evidence supports the conclusion that O'Conner knew that his unlicensed firearms dealing was illegal:
 
 
 11
 1. O'Conner testified that he was aware of the Gun Control Act of 1968 to the extent that the importation of certain weapons was banned.
 
 
 12
 2. In recordings of his conversations with Agent Warren introduced at trial, O'Conner told Warren that a $200 tax stamp was required for the possession of a submachine gun.
 
 
 13
 3. O'Conner indicated an awareness of the legal requirement for dealers to report sales to the BATF on Form 4473 by filling out these forms as a customer on numerous occasions and by admittedly purchasing firearms "off the books" from over 30 firearms dealers.
 
 
 14
 4. Agent Warren testified that O'Conner told him to watch out for BATF agents at gun shows and told him how to identify them.
 
 
 15
 5. Agent Warren testified that O'Conner told him that he sold hundreds of guns to dope dealers, all without papers being filed.
 
 
 16
 The evidence in the record convinces us that, taken in the light most favorable to the government, sufficient evidence supports the jury's conclusion that O'Conner deliberately engaged in firearms dealings in knowing violation of the law.III.
 
 
 17
 Second, O'Conner argues, at trial the prosecution improperly and repeatedly characterized certain weapons he sold as "assault rifles," yet during cross-examination Agent Warren testified that he did not know the definition of an "assault rifle." Agent Warren also admitted that none of the rifles he had purchased from O'Conner had been banned by the federal government at the time he purchased them.
 
 
 18
 During a bench conference, the propriety of the "assault rifle" characterization was discussed. The judge then instructed the jury that "there is nothing unlawful about owning what has been referred to as an assault rifle ... simply because it's an assault rifle." The judge also said, "It does not make a difference insofar as your deliberations are concerned whether the guns are lawful or unlawful."
 
 
 19
 O'Conner has argued that the trial was riddled with references to "assault" weapons. O'Conner claims that the references poisoned the jurors' minds to the point where a fair trial was impossible, and therefore a new trial should be ordered.
 
 
 20
 But the jury was specifically instructed that whether or not the guns were properly termed "assault rifles" had no relevance to the legality of O'Conner's conduct. In light of that curative instruction, and mindful of the overwhelming evidence of O'Conner's wrongdoing, we hold that the prosecutor's comments, whether or not accurate, did not deprive him of a fair trial. See Darden v. Wainwright, 477 U.S. 168, 181-83 (1986) (prosecutor's comments did not deprive defendant of a fair trial in light of curative instructions and overwhelming evidence of guilt).
 
 IV.
 
 21
 Third, O'Conner claims that Sec. 3E1.1 of the Sentencing Guidelines, the acceptance of responsibility provision, is unconstitutional because it violated his fifth amendment right not to incriminate himself. At sentencing, O'Conner was denied a two-level credit for acceptance of responsibility. The principal difficulty was that he did not admit having knowledge of the illegality of his conduct although he did admit to selling the guns. The judge reasoned that the acceptance of responsibility credit is simply not available to a defendant who continues to profess his innocence after conviction. O'Conner argues that the court's failure to award the responsibility credit was an attempt to make him admit his guilt, even though he continued to profess his innocence. Such coercion, O'Conner argues, violates the fifth amendment of the United States Constitution.
 
 
 22
 We, however, have already answered the question in a way contrary to O'Conner's position. In United States v. Gordon, 895 F.2d 932 (4th Cir.1990), the defendant argued that the fifth amendment was violated when the only reason that he was denied an acceptance of responsibility credit was his failure to admit his guilt of his criminal conduct. We rejected his contention, reasoning that "a defendant is not penalized for failing to accept responsibility. Rather, acceptance of responsibility is a mitigating factor available under appropriate circumstances." 895 F.2d at 936-37. In view of our decision in Gordon, O'Conner's argument is foreclosed.
 
 V.
 
 23
 When O'Conner was sentenced, Sec. 2K2.3 of the Sentencing Guidelines provided for a two-level increase "if the defendant [when selling a firearm] knew or had reason to believe that a purchaser was a person prohibited by federal law from owning the firearm." Agent Warren, in his undercover capacity, had told O'Conner of his status as a felon.
 
 
 24
 O'Conner argues that he did not understand Warren to be talking about felon status and had he known Warren to be a convicted felon, he would have acted differently. The argument is simply belied by the record. Warren's statements were recorded on tape. During a conversation on April 13, 1988, Warren told O'Conner, "I would appreciate you selling it to me. You know, I got in a little bit of a bind a few years ago and I can't buy one, you know, from a dealer or anything.... I couldn't have a gun as long as I was a felon." Later, Warren told O'Conner, "I thought I never could buy anything [guns] at those places [gun shops] cause I told you I got jammed up a few years ago." In light of the record, we consider O'Conner's argument to be without merit.
 
 VI.
 
 25
 For the foregoing reasons, the judgment of the district court is
 
 
 26
 AFFIRMED.