928 F.2d 400
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Brian Vaughn BACKER, Defendant-Appellant.
 No. 90-5371.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 15, 1991.
Decided March 14, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CR-90-116-A)
 Joseph J. McCarthy, Dawkins, Hanagan, McCarthy & Sengel, Alexandria, Va., for appellant.
 Henry E. Hudson, United States Attorney, Steven G. Bonorris, Special Assistant United States Attorney, Alexandria, Va., for appellee.
 E.D.Va.
 AFFIRMED.
 Before K.K. HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Brian Vaughan Backer, a federal prisoner, appeals from the order of the district court denying his motion to suppress and from the sentence imposed by the court under the Sentencing Guidelines following his plea of guilty. We affirm.
 
 
 2
 On March 13, 1990, agents Crooke and Clark of the Drug Enforcement Administration ("DEA") were monitoring Trump Shuttle flights arriving at Washington National Airport from New York City. Backer was observed in a disembarking crowd of passengers. The only item which apparently attracted the officers' attention was the fact that Backer was wearing a full length down coat despite the local temperature being in the 80's. The agents followed Backer and a companion, Petry, until they exited the terminal. Outside the terminal Backer and Petry entered a taxi line. Though many cabs were available, Backer and Petry made no effort to advance in line, instead letting other people pass around them. At some point Backer and Petry left the line and went to an area where cabs were dropping off passengers and attempted to flag down a taxi there. At this point the DEA agents approached the pair.
 
 
 3
 Crooke and Clark identified themselves as police officers and displayed their identification. They were not in uniform and made no display of weapons. After confirming that Backer and Petry had arrived from New York Crooke asked to see their tickets; Backer produced a ticket bearing the name of Tracy Powell. Crooke then asked for identification. Backer produced a D.C. drivers license bearing his real name. Backer explained the name on the ticket by stating that his girlfriend had purchased the ticket so that he could get a youth discount. Upon further questioning Backer explained that he had been in New York visiting Petry. Neither Petry nor Backer had any luggage with them and they explained that this was because they had clothes at each other's house (Petry lived in New York, Backer in Washington, D.C.).
 
 
 4
 Crooke then stated that he was with the DEA and explained that he was involved in trying to stem the flow of drugs into Washington from New York. He asked whether either Backer or Petry was carrying cocaine. Both responded in the negative. Crooke then asked Petry if he would permit a body search. At this point, the testimony at the suppression hearing diverged. Crooke testified that he asked Petry twice; the first response was unintelligible, the second gave clear permission. Petry and Backer both testified that Crooke asked Petry for consent three or four times and that Petry refused until he concluded that Crooke would not let him go until he consented. The search of Petry revealed no contraband.
 
 
 5
 The parties also disputed the events surrounding the search of Backer. Crooke testified that while he was searching Petry Backer went to officer Clark, raised his arms, and asked if Clark wanted to search him. Clark instructed him to wait for Crooke. After completing the search of Petry, Crooke approached Backer and asked to search him. Backer again raised his arms and stated that Crooke could search him. Backer testified that Crooke did not ask permission but commenced searching him immediately after completing the search of Petry. The search of Backer revealed a plastic bag which contained cocaine in an inner coat pocket. Backer was then placed under arrest.
 
 
 6
 Backer was subsequently indicted for possession of less than 500 grams of cocaine with intent to distribute. Backer moved to suppress the drugs arguing that he had been seized in violation of the fourth amendment. An evidentiary hearing was held and at the close of the hearing the district court denied the motion. While noting that there was conflicting evidence, the court ruled that the incident was nothing more than a consensual encounter, that no seizure had taken place, and that Backer had consented to the search. After the denial of the motion to suppress, Backer and the government entered into a plea agreement which preserved Backer's right to appeal the decision on the motion. A presentence report was prepared and submitted giving Backer an adjusted offense level of 14 and a criminal history category of I; the resulting sentencing range was 15 to 20 months. Neither Backer nor the government raised any objections to the factual content of the report, though Backer did object to his failure to receive a reduction for his minimal role in the offense under U.S.S.G. Sec. 3B1.2. At the sentencing hearing the district court adopted the offense and history calculations in the report and sentenced Backer to 15 months of incarceration to be followed by three years of supervised release. Backer noticed a timely appeal.
 
 
 7
 The determination of whether a seizure has occurred is a question of fact subject to a clearly erroneous standard of review on appeal. United States v. Gordon, 895 F.2d 932, 937 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S.1990). In determining whether a seizure has occurred the issue is whether "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Id. (citations omitted). Where police officers merely approach an individual in public and ask him to answer questions the fourth amendment is not violated. Florida v. Royer, 460 U.S. 491, 497 (1983); Gordon, 895 F.2d at 937. The voluntariness of a person's consent to a search is also a factual question reviewed under a clearly erroneous standard. Id. at 938. Whether consent was voluntarily given is determined based upon the totality of the circumstances. Id. Agent Crooke testified that Backer consented to the search and indicated his willingness by twice raising his arms. While Backer's testimony was contradictory, the resolution of the issue of credibility lay solely within the province of the district court.
 
 
 8
 The facts of the present case are indistinguishable from those in Gordon. We accordingly affirm the conclusion of the district court that instead of a seizure, the interaction between Backer and the DEA agents was a consensual encounter.
 
 
 9
 Backer contests the district court's failure to allow a four point reduction under U.S.S.G. Sec. 3B1.2 for his allegedly minimal role in the offense. A district court finding concerning the defendant's role in the offense is a factual one reviewed under a clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir.1989). At the sentencing hearing no evidence was produced; the court merely considered legal argument concerning the adjustment. In its sentencing memorandum the district court concluded that since Backer was not charged with criminal group conduct there was "no basis or occasion" for an adjustment under Sec. 3B1.2.
 
 
 10
 Mitigating role adjustments apply only where there has been group conduct and a particular defendant is less culpable than other members of the group to such a degree that a distinction should be made between that defendant and the other participants. Gordon, 895 F.2d at 935. The defendant has the burden of proof on the issue of his entitlement to a reduction under Sec. 3B1.2. Id. The indictment against Backer did not charge any group conduct, and Backer offered no evidence concerning the involvement of others in the offense. The district court properly concluded that Backer was not entitled to a reduction under the facts of this case.
 
 
 11
 In conclusion, finding no error, the decisions of the district court are affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED