UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.                                              No. 00-4438

BRIAN ARDEN RICHMOND,
          *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Charles H. Haden II, Chief District Judge.
(CR-99-239)

Argued: June 7, 2001

Decided: August 16, 2001

Before LUTTIG, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Edward Henry Weis, First Assistant Federal Public
Defender, Charleston, West Virginia, for Appellant. John Lanier File,
Assistant United States Attorney, Charleston, West Virginia, for
Appellee. **ON BRIEF:** Mary Lou Newberger, Acting Federal Public
Defender, Charleston, West Virginia, for Appellant. Rebecca A.
Betts, United States Attorney, Charleston, West Virginia, for Appel-
lee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Brian Richmond ("Richmond") appeals the district court's denial of a downward adjustment in his sentence for acceptance of responsibility, claiming that the court's decision was improperly grounded in his refusal to testify at his sentencing hearing regarding the quantity of cocaine involved in the drug conspiracy that led to his plea. Finding no clear error in the district court's determination that Richmond did not clearly demonstrate acceptance of responsibility for his offense, we affirm.

I.

On December 14, 1999, a grand jury in Charleston, West Virginia returned a ten-count indictment against Richmond, Marvin Anderson ("Anderson"), Earl Cox ("Cox"), Edgar Crislip ("Crislip") and others, alleging, inter alia, that they conspired to knowingly and intentionally distribute, and to possess with intent to distribute, cocaine and marijuana, in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1999). Shortly after being arrested, Richmond wrote Cox a letter (the "Cox letter") outlining some elements of the conspiracy, but without, for the most part, discussing the quantity of drugs involved.

On February 24, 2000, Richmond entered into a plea agreement (the "plea agreement") with the United States (the "government"), under which he pled guilty to the conspiracy charge and promised to answer truthfully questions posed by law enforcement officers. The government, in turn, gave Richmond use immunity and promised to dismiss the remaining counts against him.[1]

---

[1]With respect to use immunity, the plea agreement provides that "nothing contained in any statement or testimony provided by [Richmond] pursuant to this agreement, or any evidence developed therefrom, will be used against him, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines." (J.A. at 021.)

After Richmond pled guilty, the probation officer handling his case compiled a Presentence Investigation Report (the "PSR"), an undertaking that entailed the elusive yet critical task of determining the quantity of drugs involved in the conspiracy.[2] In fashioning her estimate of cocaine quantity, the probation officer relied on the higher of two estimates Anderson had provided to the authorities. In pre-plea interviews, Anderson had estimated handling approximately 8.165 kilograms ("kg") of cocaine. Post-plea, however, Anderson had revised his estimate downward to approximately .709 kg. Richmond, for his part, denied that the conspiracy involved 8.165 kg of cocaine, although he declined at first to provide an alternative figure. The probation officer nonetheless credited Anderson's high estimate because she thought it more consistent with the remaining evidence. She thus converted the total amount of drugs involved to a marijuana equivalency weight of 1,665.619 kg under § 2D1.1 of the U.S. Sentencing Guidelines Manual (the "guidelines").

Although she had rejected Richmond's denial that the conspiracy involved 8.165 kg of cocaine, the probation officer nevertheless recommended that Richmond receive a downward adjustment in the base offense level used to calculate his sentence on the ground that he had accepted responsibility for his criminal conduct within the meaning of § 3E1.1 of the guidelines. The probation officer reasoned that Richmond's rejection of Anderson's first estimate was neither a "false denial" of, nor a "frivolous argument" regarding, cocaine quantity. (J.A. at 155.) In his reply to the PSR (the "reply"), Richmond objected to the probation officer's finding that the conspiracy involved 8.165 kg of cocaine. Arguing from other evidence, Richmond more specifically contended that the conspiracy involved a total of only 1.887 kg of cocaine.[3] Thus, according to Richmond, the total marijuana equiva-

---

[2]Due to the nature of the charge to which Richmond pled guilty, the aggregate amount of drugs involved in the conspiracy is attributable to him for sentencing purposes. The task of determining drug quantity here was particularly difficult because while there was no dispute that the conspiracy involved between thirty-two and thirty-three kilograms of marijuana, the quantity of cocaine involved was hotly disputed.

[3]Richmond argued that co-conspirators Josh Johnson and Lionel Garner had transported a total of 793.8 grams of cocaine; Crislip had handled another 907.2 grams; the Cox letter established an additional 155.93 grams; amounts sold to undercover officers revealed another 2.19 grams; and officers' estimates of other drug inventory established an additional 27.5 grams.

lency weight came to 377.324 kg. The government, meanwhile, conditionally objected to the recommendation that Richmond receive a downward adjustment, arguing that if the district court were to agree with Anderson's first estimate regarding cocaine quantity, then it would be inconsistent to grant Richmond an adjustment unless he acknowledged involvement with that amount of cocaine.

After considering the parties' objections, the probation officer switched her position and recommended against an acceptance of responsibility adjustment. The revised Presentence Investigation Report succinctly states her rationale:

> Based on the statements of Marvin Anderson, Earl Cox, Edgar Crislip, and Lionel Garner, it appears Mr. Richmond's denial of the drug amounts for which he is held accountable is a false denial of relevant conduct. During the pre-sentence interview, upon advice of counsel, the defendant did not advise of a drug amount for which he believed he was accountable. The defendant did, however, clearly state his position in his letter of objection. From that statement, it appears Brian Richmond feels he is responsible for the distribution of no more than 1,886.62 grams of cocaine. This amount is significantly less than the statements of co-defendants suggest.

(J.A. at 181.)

At Richmond's May 22, 2000 sentencing hearing, the government adduced testimony on the subject of drug quantity from Anderson, Lionel Garner, and Josh Johnson. The government also called Richard Hall, a sergeant for the West Virginia State Police, who testified to statements Crislip had made on that subject. Notably, Anderson gave yet a third estimate of the amount of cocaine handled in the course of the conspiracy.

Although Richmond presented no evidence, he renewed, through counsel, his arguments concerning drug quantity, including the contention that the conspiracy only involved 1.887 kg of cocaine. However, when the district court asked Richmond's counsel directly how

much cocaine was involved by Richmond's own admission, the following exchange occurred:

> DEFENSE COUNSEL: Well, Your Honor, "by his own admission" is under the term[s] of the plea agreement, which is use immunized, excepting, of course, for the [Cox] letter.

> THE COURT: Well, tell me what that is.

> DEFENSE COUNSEL: And in my view, [the Cox] letter is five and a half or four ounces for 155.93 grams because the rest of the letter talks about the trips that Crislip, Garner and Johnson made.

> THE COURT: Well, you are not telling me what I'm asking you and I'm considering this for purposes of acceptance of responsibility.

(J.A. at 116.)

Following this discussion, the court heard additional arguments from both parties. Before taking a recess to determine the defendant's sentence, the court expressed frustration with the positions taken by both parties:

> I think both individuals have been — left the Court with a great deal of vague information. The defense wishes to get acceptance of responsibility, but the defense is not candid in the amounts that it might admit to, and the government wishes to bring to the Court's attention that there was at least five kilos of cocaine handled, if I were to credit everything that everyone has said at the highest level. The truth obviously lies somewhere in between, but I am not getting any help at all from the defense as to candor.

(J.A. at 122.)

At this point, Richmond's counsel reminded the court that his cli-

ent had explicitly admitted to involvement in significant aspects of the conspiracy through his acknowledgment of the truth of the contents of the Cox letter. Putting these admissions together with the testimony presented at the hearing, he again argued that the conspiracy involved less than two kg of cocaine.[4]

In the final analysis, however, the court determined that the conspiracy involved 2.934 kg of cocaine. In so doing, the court rejected both Anderson's first cocaine estimate and Richmond's various contentions that the conspiracy involved less than two kg of cocaine. Converting aggregate drug quantity to a marijuana equivalency weight, the court estimated that the conspiracy involved between 610 and 632 kg of marijuana.[5]

The court then denied Richmond the adjustment for acceptance of responsibility, remarking that:

> Obviously, Mr. Richmond has played his involvement in this conspiracy close to the vest and let the Court figure out what was involved here and I figured it out to the best of my ability based upon the evidence that I have heard, but not through the cooperation and candor of the defendant.

(J.A. at 126.)

The court then sentenced Richmond to 189 months in prison,[6] five years of supervised release, and a $1,000 fine. On May 25, 2000,

---

[4]Here, counsel argued that Richmond had admitted to involvement in the conspiracy from June of 1998 until February or early March of 1999. Since, in his view, the members of the conspiracy handled an average of two ounces of cocaine per week throughout a thirty-five-week period, he argued that the total amount of cocaine came to seventy ounces, or 1.985 kg.

[5]In its May 25, 2000 sentencing report, the court fine-tuned its calculation to a marijuana equivalency weight of 619.5 kg.

[6]The applicable guideline range was 168 to 210 months. Had the court awarded Richmond a full three-level reduction for acceptance of responsibility, the applicable guideline range would have been 121 to 151 months.

Richmond timely filed this appeal, in which he argues that the district court erred in denying him an acceptance of responsibility adjustment.

## II.

A district court's decision to grant or deny an adjustment for acceptance of responsibility under § 3E1.1 of the guidelines is a factual determination that we review for clear error. *See*, *e.g.*, *United States v. Gordon*, 895 F.2d 932, 937 (4th Cir. 1990). Because the sentencing court "is in a unique position to evaluate a defendant's acceptance of responsibility," the guidelines specifically provide that the court's determination "is entitled to great deference on review." U.S. Sentencing Guidelines Manual § 3E1.1, cmt. n.5 (1998).

## III.

The guidelines authorize a sentencing judge to reduce a defendant's base offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his [or her] offense." U.S.S.G. § 3E1.1(a). In determining whether a defendant has accepted responsibility for purposes of § 3E1.1(a), the court may consider whether the defendant, among other things,

> truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or [did] not falsely deny[ ] any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a) [of § 3E1.1]. A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his [or her] ability to obtain a reduction under [subsection (a)]. *However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.* U.S.S.G. § 3E1.1, cmt. n.1(a) (emphasis added).

Richmond maintains that because the court did not explicitly cite any of the guidelines criteria relevant to an acceptance of responsibility determination, we must conclude that the court relied solely on his refusal to testify at his sentencing hearing in denying him the adjustment. Because, moreover, the government guaranteed him use immunity under the plea agreement, and in view of the provision in the guidelines that, as to acceptance of responsibility, a defendant may remain silent at sentencing, Richmond contends that the court's reliance on his refusal to testify amounts to reversible error.

We find Richmond's arguments meritless. Assuming, without deciding, that drug quantity here constitutes "relevant conduct beyond the offense of conviction," as to which Richmond may "remain silent . . . without affecting his ability to obtain a reduction,"[7] the court below had ample ground to deny Richmond a reduction for acceptance of responsibility, because Richmond in fact did *not* remain silent. Rather, Richmond argued quite directly, both in the reply and at sentencing, that the amount of cocaine attributable to the conspiracy, and thus to him, did not exceed two kg.

The district court, in contrast, determined that the amount of cocaine attributable to Richmond approached three kg. As to nearly a full kilogram of cocaine, it is therefore clear that Richmond falsely denied "relevant conduct that the court determine[d] to be true." U.S.S.G. § 3E1.1, cmt. n.1(a). As the guidelines clearly provide, such a defendant "has acted in a manner inconsistent with acceptance of responsibility." *Id.* Plainly, then, the district court could properly deny Richmond an adjustment under § 3E1.1 on the ground that he falsely denied relevant conduct.

---

[7]The parties are in dispute as to whether drug quantity here constitutes "conduct comprising the offense" (i.e., "offense conduct") or "relevant conduct beyond the offense of conviction" (i.e., "relevant conduct") for purposes of § 3E1.1. In light of our conclusion, discussed further below, that even if drug quantity here constitutes relevant conduct, the district court properly found that Richmond falsely denied such conduct, it is unnecessary for us to pass on the question of whether drug quantity here constitutes relevant conduct, or on the secondary question of whether a denial of a § 3E1.1 adjustment could properly be based on a defendant's decision to remain silent as to such conduct.

The court's remarks at sentencing indicate that this is precisely what the court did. After Richmond asserted that the conspiracy only involved 1.867 kg of cocaine, the court noted that while Richmond desired an acceptance of responsibility adjustment, the defense was not "candid in the amounts that it might admit to." (J.A. at 122.) The court went on to express its dismay at the positions taken by both parties, observing that "[t]he truth obviously lies somewhere in between." *Id.* The first remark evidences the court's awareness of the fact that while Richmond had admitted, through counsel, involvement with a certain quantity of cocaine, he nevertheless had not been fully "candid" with respect to those amounts.[8] The court's second comment manifests its frustration with being forced to choose between widely disparate representations, *neither* of which it regarded as true.

The importance of these remarks is not only that the court deemed Richmond's arguments untruthful, but that it considered this fact in determining whether or not he had accepted responsibility for his crime. In pointing out the incongruity in Richmond's attempt to obtain an acceptance of responsibility adjustment while arguing half-truths regarding drug quantity, the court revealed its view that Richmond's arguments amounted to false denials within the meaning of § 3E1.1. Put another way, the court's remarks indicate that the decision to deny Richmond a reduction for acceptance of responsibility was based not on adverse inferences drawn from his silence, but, rather, on inferences properly drawn from his "admissions."[9]

---

[8]In this regard, the court apparently used the word "candid" to mean "free from expedient reservation and modification," or "indicating or suggesting sincere honesty and absence of deception and duplicity." Webster's Third New International Dictionary (1986).

[9]We further note that the court's conclusions echo those of the probation officer, who only reversed her position when Richmond, through counsel, made specific representations in the reply to the PSR that underestimated drug quantity. As noted above, the probation officer had recommended in the PSR that Richmond receive a downward adjustment, notwithstanding the fact that he had not forwarded any evidence, nor made any affirmative representations, regarding drug quantity. The central point here is that a thorough review of the sentencing hearing transcript — including the court's additional remarks that Richmond had played his involvement "close to the vest," that the court had calculated

Under these circumstances, we cannot say that the district court clearly erred in reaching its determination that Richmond did not accept responsibility for his criminal conduct within the meaning of § 3E1.1. We are especially confident in our decision given that "the determination of the sentencing judge is entitled to great deference on review."

## IV.

In sum, the nearly fifty percent variance between the amount of cocaine Richmond acknowledged accountability for and the amount the district court ultimately attributed to him provided a factual basis for denying Richmond an adjustment for acceptance of responsibility. The district court was thus entitled to find — as its comments indicate it did — that Richmond evinced a "lack of candor" unbefitting a defendant seeking such an adjustment. For these reasons, the judgment of the district court is hereby affirmed.

*AFFIRMED*

---

drug quantity "without the cooperation and candor of the defendant," and that "you [Richmond] are not telling me what I'm asking you" — indicates that the court's denial of the adjustment was likewise based on Richmond's duplicitous legal strategy of underestimating drug quantity while simultaneously seeking an adjustment for acceptance of responsibility, *not* on Richmond's failure to testify.