39 F.3d 1178
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Darrell James DEBREW, Defendant-Appellant.
 No. 93-5766.
 United States Court of Appeals, Fourth Circuit.
 Submitted: April 5, 1994.
Decided: Nov. 15, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CR-92-117-5)
 Angela D. Whitley, Chesterfield, VA, for appellant. J. Douglas McCullough, U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 OPINION
 Before WIDENER and HAMILTON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Darrell James Debrew pled guilty to possession with intent to distribute crack cocaine in violation of 21 U.S.C.A. Sec. 841(a)(1) (West 1981). He now appeals and challenges the district court's denial of his motion to suppress evidence. He asserts that (i) the detectives improperly seized him before they searched his luggage because they lacked reasonable suspicion or probable cause; (ii) the detectives searched his luggage without his consent; (iii) assuming he consented to the luggage search, he limited the consent so that it did not extend to the false bottom of the closed metal container from which the detectives seized the cocaine; and (iv) the detectives obtained his statements in violation of his Fourth, Fifth, and Sixth Amendment rights because the Miranda[1] warnings were inadequate as a matter of law, and such statements constituted fruits of the poisonous tree. We disagree and affirm.
 
 I.
 
 2
 Two Rocky Mount, North Carolina, detectives conducted a routine drug interdiction at the Amtrak Station. They looked for a person named "Williams," who had supposedly boarded the train in New Jersey. When the train arrived in Rocky Mount, Debrew exited the train and walked toward the detectives.
 
 
 3
 As Debrew approached Detective Rosenfield, Detective Rosenfield walked beside Debrew and identified himself as a police officer. Both detectives wore plain clothes and concealed their weapons. Detective Rosenfield asked Debrew if he would talk with him; Debrew responded, "Okay." When Detective Rosenfield asked to see Debrew's ticket, Debrew gave him an empty ticket holder and explained that he must have left the ticket on the train and that he boarded the train in New York.
 
 
 4
 Debrew approached a telephone booth, and the detectives stepped away from the telephone area. As Debrew left the telephone booth, Detective Rosenfield asked him for some identification. The detectives determined that the name "Debrew" did not appear on the train's passenger list. Detective Rosenfield explained that he and Detective Brown were narcotics officers, and they asked Debrew if he would consent to a search of his luggage; Debrew said, "Okay, I don't mind."
 
 
 5
 Debrew knelt down, unzipped his bag, and pulled some clothes out of the bag. Detective Rosenfield saw several cans in the bag; when he picked up the first can, he felt an uneven weight distribution. Detective Rosenfield took off the can's lid and saw a false bottom; he unscrewed the bottom of the can and discovered several empty plastic bags in a hidden compartment. Debrew then asked whether he had to consent to the search. Detective Rosenfield said no but indicated that they only asked for his cooperation.
 
 
 6
 Debrew continued to cooperate and handed Detective Rosenfield a second can which was empty. Detective Rosenfield noticed another can which he removed from Debrew's bag. Debrew became nervous and looked toward the street as if he wanted to run. This can also had a false bottom which, when opened, revealed over a pound of crack cocaine. When Detective Rosenfield discovered the cocaine, Debrew said that the cans were not his and that he merely brought them down from New York. The detectives arrested Debrew for possession of crack cocaine. The encounter lasted about ten minutes.
 
 
 7
 At the police station, Detective Brown orally advised Debrew of his Miranda rights and asked him to initial a form acknowledging that he received the proper warnings. Debrew initialed the form and indicated that he understood his rights. Neither Detective Brown nor the form, however, informed Debrew that he had the right to court-appointed counsel if could not afford an attorney. The detectives took Debrew into an office so that he could call his personal attorney. Debrew's attorney did not answer, and Debrew said that he would try again later.
 
 
 8
 Detective Brown then asked Debrew routine biographical questions. During this time, Debrew said, "Look man, I'll tell you about it." Debrew told the detectives that he picked up the cans from a store in New York City but did not know they contained cocaine. He insisted that he would not have allowed the detectives to search his bag had he known about the cocaine.
 
 
 9
 The detectives reminded Debrew of his rights and asked if he understood them. Debrew again tried unsuccessfully to reach his attorney, and he then signed the waiver of rights form which he had initialed earlier. Detective Brown asked Debrew questions about the cocaine charges, but he gave conflicting answers. Debrew agreed to continue his cooperation, and the detectives recorded their interview with him.
 
 
 10
 When the detectives transferred Debrew to federal custody, the federal agent gave Debrew a complete Miranda warning, including his right to court-appointed counsel. Debrew indicated that he understood his rights and spoke to the agent about the cocaine charge without his lawyer.
 
 
 11
 After the grand jury indicted Debrew, he moved to suppress the cocaine and the statements he made to Detectives Rosenfield and Brown before they transferred him to federal custody.[2] The magistrate judge conducted two evidentiary hearings; because he found the detectives' testimony credible, he denied the motion to suppress the cocaine but granted the motion to suppress Debrew's initial postarrest statements made to the detectives. The district court reviewed the magistrate judge's findings de novo and admitted the cocaine and the initial post-arrest statements.
 
 
 12
 Debrew pled guilty, and the court sentenced him to 324 months imprisonment, ordered sixty months supervised release, and imposed a $50 special assessment. Debrew reserved his right to appeal the court's pretrial ruling on his motion to suppress, and he noted a timely appeal.
 
 II.
 
 13
 We review legal conclusions involved in the district court's suppression determination de novo but review factual findings underlying the legal conclusions subject to the clearly erroneous standard. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S.1992). Factual findings based, at least in part, on determinations of witness credibility are accorded great deference on appeal. Anderson v. Bessemer City, 470 U.S. 564, 575 (1985); McNairn v. Sullivan, 929 F.2d 974, 977 & n. 3 (4th Cir.1991). In fact, we " 'may not reverse a trier of fact, who had the advantage of hearing the testimony, on the question of credibility.' " Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 104 (4th Cir.1991) (quoting McCrary v. Runyon, 515 F.2d 1082, 1086 (4th Cir.1975), aff'd, 427 U.S. 160 (1976)). Based on the record, the district court's factual findings were not clearly erroneous.
 
 
 14
 Debrew first claims that Detectives Rosenfield and Brown improperly seized him before they searched his luggage. Consensual police-citizen encounters do not amount to a seizure under the Fourth Amendment. United States v. Analla, 975 F.2d 119, 124 (4th Cir.1992), cert. denied, 61 U.S.L.W. 3714 (U.S.1993). To determine if an encounter is consensual, the inquiry focuses on "whether a reasonable person would have felt free to decline the officers' requests or otherwise terminate the encounter." Rusher, 966 F.2d at 877. A person is not seized when "police officers ... approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he ... could refuse to cooperate." Florida v. Bostick, 59 U.S.L.W. 4708, 4709 (U.S.1991). The inquiry is an objective test. Analla, 975 F.2d at 124 (citing United States v. Gordon, 895 F.2d 932, 938 (4th Cir.), cert. denied, 498 U.S. 846 (1990)).
 
 
 15
 When Detective Rosenfield asked Debrew to answer some questions, Debrew was not seized. The detectives wore plain clothes; they did not draw their guns or threaten Debrew with physical force. The record discloses that Detectives Rosenfield and Brown approached Debrew in their drug interdiction efforts and asked Debrew to talk to them, conducted routine inquiries about his trip, and asked Debrew to provide identification and his train ticket which they promptly returned. Detective Rosenfield's conversation with Debrew did not appear to be intimidating. Finally, the detectives did not tell Debrew that they suspected him of illegal activities. See generally United States v. Gray, 883 F.2d 320, 322-23 (4th Cir.1989) (discussing factors courts consider in determining whether a seizure occurred). At any time during the questioning, a reasonable person in Debrew's position would have believed that he could terminate the encounter or refuse to answer the questions. Therefore, because Debrew's encounter with the detectives was consensual, no Fourth Amendment rights were implicated. Accordingly, we need not determine whether reasonable suspicion existed.
 
 
 16
 Debrew next argues that his consent to search his bag was involuntary and that even if his consent was voluntary, the detectives exceeded the scope of his consent. On appeal, a district court's finding of consent must be upheld unless it was clearly erroneous. United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990) (citing United States v. Mendenhall, 446 U.S. 544, 558 (1980)). Based on the detectives' testimony, the district court's finding that Debrew consented to the search and that the detectives did not exceed the scope of his consent was not clearly erroneous.
 
 
 17
 Debrew also contends that the detectives obtained his statements in violation of his Fourth, Fifth, and Sixth Amendment rights.[3] He focuses on the precise language of the warnings he received and argues that because they failed to mirror the warnings in Miranda, he could not have voluntarily waived his right to court-appointed counsel. He also claims that the detectives improperly questioned him after he invoked his right to counsel. Finally, he claims that his subsequent statements to the detectives constitute fruit of the poisonous tree.
 
 
 18
 In Miranda, the Supreme Court established safeguards to protect criminal suspects from the inherent coercive effects of custodial interrogation,[4] but the Supreme Court has never required that Miranda warnings be given in the exact form described in that decision. Duckworth v. Eagan, 492 U.S. 195, 201-02 (1989); California v. Prysock, 453 U.S. 355, 359-60 (1981). In Miranda, the Court said that "[t]he warnings required and the waiver necessary ... are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant." Miranda, 384 U.S. at 476. Further, reviewing courts need not examine Miranda warnings as if construing a will or defining an easement. The inquiry focuses on whether the warnings " 'conveyed to [a suspect] his rights as required by Miranda.' " Duckworth, 492 U.S. at 203 (quoting Prysock, 453 U.S. at 361).
 
 
 19
 Although the warnings Debrew received failed to inform him of his right to court-appointed counsel, the detectives properly advised him of his right to the presence of an attorney during questioning. This warning constitutes a "fully effective equivalent" that conveyed to Debrew his rights. Debrew attempted to reach his personal attorney once before he made his initial confession during the routine booking questions and again before the detectives recorded his statement. Further, the Court in Miranda stated that "a warning that the indigent may have counsel appointed need not be given to the person who is known to have an attorney or is known to have ample funds to secure one" but cautioned that because giving the warning is simple, the police should avoid ex post facto inquiries into financial ability. Miranda, 384 U.S. at 473 n. 43. Here, the detectives were aware that Debrew had an attorney and that he sought his advice so no ex post facto inquiry was required. Therefore, Debrew's statements to the detectives were admissible.[5] Debrew finally argues that detectives violated his right to counsel when they reinitiated questioning without his counsel present. Once a suspect invokes his right to an attorney, the questioning must cease and only routine booking information may be obtained from a suspect. See Pennsylvania v. Muniz, 496 U.S. 582, 600-02 (1990); Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The Government could establish that Debrew waived his right and that his waiver was knowing and voluntary. See Moran v. Burbine, 475 U.S. 412, 421 (1986); Miranda, 384 U.S. at 475. The waiver need not be express but may be inferred from the circumstances. North Carolina v. Butler, 441 U.S. 369, 375-76 (1979); Gordon, 895 F.2d at 938.
 
 
 20
 Debrew knew he had a right to an attorney because he tried to contact him twice. At that point, the detectives asked only routine biographical questions. When Debrew told the detective, "Look man, I'll tell you about it," Debrew reinitiated the interrogation. See Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983). The detectives reminded Debrew of his rights before Debrew gave the detectives his statements about the cocaine. Therefore, because it can be inferred that Debrew voluntarily waived his right to counsel, his statements were admissible.[6]
 
 III.
 
 21
 For the foregoing reasons, we affirm Debrew's conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [2]
 Debrew does not challenge the admissibility of his statements made to the federal officers after receiving a complete Miranda warning and making a valid waiver of his rights
 
 
 [3]
 Debrew's Sixth Amendment right to counsel was not violated because no adversary proceedings had been initiated against him at the time he made the statements. See Michigan v. Jackson, 475 U.S. 625, 629-30 (1986)
 
 
 [4]
 The suspect "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Miranda, 384 U.S. at 479
 
 
 [5]
 Even if these statements were not admissible, Debrew conveyed the same information to the federal officers after a complete Miranda warning. He made the statements without his attorney present but after a valid waiver of his rights, thereby rendering the statements admissible regardless of whether the statements to the detectives were admitted
 
 
 [6]
 Because no Fourth Amendment rights were implicated by the detectives' encounter with Debrew at the train station and because Debrew's statements were admissible, his argument that his statements should be suppressed as fruit of the poisonous tree lacks merit