958 F.2d 369
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gustavo CALLE-BETANCOURT, Defendant-Appellant.
 No. 91-5368.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 25, 1992.
Decided March 16, 1992.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CR-90-168)
 Scott T. Kalisch, Kalisch & Lyons, P.A., Coral Gables, Fla., for appellant.
 Thomas J. Ashcraft, United States Attorney, H. Thomas Church, Assistant United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before PHILLIPS, NIEMEYER and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Gustavo Calle-Betancourt, a citizen of Columbia who resided illegally in the United States for approximately one and one-half years prior to the incident here in question, appeals from the district court's denial of his motion to suppress the cocaine found in his suitcase during an airport search. Calle-Betancourt pled guilty to one count of possessing with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (1988), reserving the right to appeal the suppression decision under Fed.R.Crim.P. 11(A)(2). Calle-Betancourt argues on appeal that the initial airport stop constituted an illegal seizure within the meaning of the Fourth Amendment, that his subsequent consent was involuntary because he does not understand English, and that the search of his luggage was further tainted by the illegal seizure. Our review of the parties' briefs and the record leads us to affirm.
 
 I.
 
 2
 Calle-Betancourt deplaned in Charlotte, North Carolina, from a USAir flight originating in Miami on the afternoon of October 17, 1991. He was observed by Mecklenburg County Police Officer Jones and Special Agent Davis of the North Carolina Bureau of Investigation as he proceeded through the concourse. The officers, dressed casually and carrying concealed weapons, were conducting a routine drug interdiction effort. They watched Calle-Betancourt as he changed direction several times, sat down momentarily in the baggage claim area looking very nervous, and asked a question of a Lufthansa agent who replied "over there." Calle-Betancourt then walked to the baggage conveyer, picked up a large suitcase, and walked upstairs to the ticketing area.
 
 
 3
 Their suspicions aroused, the officers followed Calle-Betancourt up the steps. When they were within approximately five feet of CalleBetancourt, Jones said, "Excuse me, sir, may I speak with you a moment?" Calle-Betancourt immediately turned around to face the officers, whereupon they identified themselves as police officers. Calle-Betancourt appeared to become even more visibly nervous. Jones explained to Calle-Betancourt that he was not under arrest or in custody and asked if Calle-Betancourt understood. CalleBetancourt nodded his head up and down indicating affirmance. Jones then asked to see Calle-Betancourt's airline ticket. Calle-Betancourt handed him the ticket without hesitation. It was a one-way ticket issued on the day of travel and paid for by check. As he looked at the ticket, Jones asked Calle-Betancourt where he was coming from and Calle-Betancourt indicated that he spoke no English. Jones then handed the ticket back to Calle-Betancourt and Davis went to a nearby ticket counter to attempt to find a Spanish interpreter.
 
 
 4
 Davis's efforts were unsuccessful. Upon his return, he told CalleBetancourt in English that they were narcotics officers and were looking for people who were smuggling cocaine or "cocaina" (Davis used both the English and the Spanish word) through the airport. CalleBetancourt immediately started to pat himself down and repeatedly said "no cocaine." Jones then asked Calle-Betancourt whether he was a United States citizen. Calle-Betancourt replied "no." When Jones asked to see his resident alien card, Calle-Betancourt stated that his card was in New York but offered a New York driver's license as identification. The officers learned that Calle-Betancourt drove a taxi in New York City.
 
 
 5
 Davis asked Calle-Betancourt if he would consent to a search of himself and his luggage and Calle-Betancourt replied "yeah, yeah, yeah." Davis reiterated, "Do you understand we want to search your person and your bag?" Calle-Betancourt again said "yeah," and raised his hands. Jones twice told Calle-Betancourt that it was not necessary to raise his hands, then explained that Calle-Betancourt was not under arrest, and began to pat him down. While this search was in progress, Davis attempted to open Calle-Betancourt's suitcase, but discovered that it was locked with a padlock. He and Jones asked CalleBetancourt for a key. Calle-Betancourt looked through his wallet, but could not find the key.
 
 
 6
 The officers were concerned that the search was attracting too much attention and asked Calle-Betancourt if he wanted to go to a more private place. No verbal answer was given, but Calle-Betancourt began to follow Jones as Jones walked toward an adjacent hallway. Davis picked up Calle-Betancourt's suitcase and followed. Once inside the hallway with the door closed behind them, Jones asked Calle-Betancourt how he intended to open the suitcase when he got home. Calle-Betancourt responded, "No comprende." Davis then walked to a nearby airlines office in the hopes of finding a master key, but returned with a screwdriver. He asked Calle-Betancourt if he could open the padlock with the screwdriver, explaining that to do so would ruin the lock; Calle-Betancourt responded, "No problem." He repeated this phrase, "No problem," several times.
 
 
 7
 Davis easily broke the padlock with the screwdriver, opened the suitcase, and observed multiple kilograms of what he believed to be cocaine inside. He reported his observations to Jones, and CalleBetancourt spontaneously commented, "No, no, not mine." CalleBetancourt was placed under arrest and transported to the Mecklenburg County Police Department. An analysis of the suitcase's contents revealed 12,105 grams of cocaine with an estimated street value of one million dollars.
 
 
 8
 Upon his arrival at the police department, Calle-Betancourt was interviewed by an INS agent who advised him of his rights using a standard form written in Spanish. Gastonia Police Officer Rouco, a Spanish-speaker of Cuban origin, then questioned Calle-Betancourt at length about his airport encounter with Jones and Davis. During this conversation, Calle-Betancourt told Rouco that he had spoken English with the Lufthansa agent at the airport to request his baggage and that he understood a few words of English. He also told Rouco that he allowed Jones and Davis to search his suitcase because he did not know that it contained cocaine. According to Calle-Betancourt, a Mr. Perez had paid him $400 to bring the suitcase from Miami to New York without disclosing its contents.[1]
 
 
 9
 Calle-Betancourt was indicted on one count of knowingly possessing with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988). After a suppression hearing before a magistrate judge during which Calle-Betancourt offered testimony to the effect that he was incapable of rendering voluntary consent due to his limited English language skills and was totally unaware that his suitcase contained cocaine, the district court denied Calle-Betancourt's Motion to Suppress. Calle-Betancourt then entered his conditional plea of guilty and was sentenced to 120 months in prison with five years supervised release plus a fifty dollar special assessment.
 
 II.
 
 10
 Calle-Betancourt first contends that he was illegally seized by Jones and Davis when they initially approached him in the airport concourse and engaged him in conversation, or later when they continued their discourse in the adjacent hallway. This argument is without merit. The Fourth Amendment is not implicated when the police simply approach a person in a public place and ask that person to answer some questions. Florida v. Bostick, 59 U.S.L.W. 4708, 4710 (U.S.1991); Florida v. Royer, 460 U.S. 491, 497 (1983). Rather, the Fourth Amendment inquiry focuses on whether the person to whom questions are directed feels free to leave. United States v. Mendenhall, 446 U.S. 544, 554 (1980) (plurality opinion). A display of weapons or physical touching, the "threatening presence of several officers," or the use of language or a tone of voice which indicates that compliance is required, are all factors tending to establish the occurrence of a Fourth Amendment seizure. Id. The district court's finding that there was no seizure is reviewed on appeal under the clearly erroneous standard. United States v. Gordon, 895 F.2d 932, 937 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S.1990).
 
 
 11
 This case is devoid of any coercive factors. Jones and Davis approached Calle-Betancourt in a well-lighted public area and requested, rather than demanded, that he speak with them. They were dressed in casual clothing and did not display their weapons. Jones explained that Calle-Betancourt was not under arrest or in custody and Calle-Betancourt indicated that he understood this by nodding his head. He then followed Jones to the adjacent hallway in response to Davis's question concerning the need for privacy. The officers did not block Calle-Betancourt's way or otherwise bar him from leaving at any point prior to his arrest. Absent some evidence of coercion, the officers' pre-arrest encounter with Calle-Betancourt cannot be characterized as a Fourth Amendment seizure. See Gordon, 895 F.2d at 937. We affirm the district court's determination that no seizure occurred.[2]
 
 III.
 
 12
 Calle-Betancourt also contends that his consent to the search of his suitcase was not voluntarily given, due to his limited English language skills. The district court's finding that Calle-Betancourt possessed sufficient English language skills to render voluntary consent is a factual determination which must be affirmed on appeal unless clearly erroneous. Id. at 938; United States v. Wilson, 895 F.2d 168, 172 (4th Cir.1990). The question of voluntariness turns on the totality of the circumstances surrounding consent. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). The government must prove voluntariness by a preponderance of the evidence, United States v. Matlock, 415 U.S. 164, 177 (1974), but need not show that the defendant knew he had the right to refuse. Gordon, 895 F.2d at 938.
 
 
 13
 In this case, the district court's determination that CalleBetancourt's consent was voluntarily given is amply supported by the record. Calle-Betancourt readily responded to most of the questions posed (in English) by Jones and Davis, including Davis's request to search his suitcase. The officers testified that they were able to communicate with Calle-Betancourt without gesturing. As noted by the magistrate judge, Calle-Betancourt did not tell Rouco that he did not understand the officers' request to search his suitcase as one might expect if he in fact had minimal English skills; rather, he stated that he allowed Jones and Davis to search the suitcase because he did not know it contained cocaine. The magistrate judge, who had the opportunity to observe the witnesses, found Calle-Betancourt's testimony to be incredible, to the extent it differed with that of government witnesses. Given the totality of these circumstances, the district court did not clearly err in finding that Calle-Betancourt voluntarily consented to the search of his suitcase. See United States v. Chaidez, 906 F.2d 377, 380 (8th Cir.1990) (totality of circumstances supported denial of Spanish-speaking defendant's suppression motion, even though defendant only shown English version of consent form).
 
 
 14
 We therefore affirm the district court's decision. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Calle-Betancourt later testified that he believed the suitcase contained clothes
 
 
 [2]
 Because we find that Calle-Betancourt was not seized prior to his arrest, we need not address his contention that the subsequent search was tainted by the allegedly illegal seizure